## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TOUGH MUDDER INCORPORATED,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.: _____** |
| **v.** ) | |
| ) | |
| **THE MINI MUDDER and BARRY C.** ) | **JURY DEMAND** |
| **DOBIL, JR. d/b/a THE MINI** ) | |
| **MUDDER,** ) | |
| ) | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Tough Mudder Incorporated ("Tough Mudder"), for its Complaint against Defendants The Mini Mudder and Barry C. Dobil, Jr. d/b/a The Mini Mudder (collectively, "Defendants"), states as follows:

## I.      INTRODUCTION

Tough Mudder is the world leader in the obstacle course challenge industry.  Tough Mudder owns a significant number of trademarks and other intellectual property.  Among other trademarks, Tough Mudder owns the federal, state and common law rights to the exclusive use of "TOUGH MUDDER," logos bearing the words "TOUGH MUDDER," and a family of other marks that include the word "MUDDER," including but not limited to, "MUDDERELLA," "MUDDER LEGION," "WORLD'S TOUGHEST MUDDER" and "MUDDER NATION" for use in connection services that include obstacle course challenges and related events and merchandise.   Tough Mudder also is the owner of federal, state and common law rights to the exclusive use of the color orange and orange headbands in connections with the aforementioned services and goods.  Tough Mudder also owns the rights to the overall look and feel of its events

including the combination of its obstacles, names for its signature obstacles, pledge, post-event celebrations, and other unique aspects.  Since its inception in 2010, Tough Mudder has held events in Pennsylvania and around the world.  Nearly two million people have participated in Tough Mudder's events.

Tough Mudder recently learned of Defendants' unlawful attempts to trade off of Tough Mudder's success and intellectual property and encouragement of others to similarly trade off of Tough Mudder's success and intellectual property.  Defendants are actively operating a business called "Mini Mudder" that attempts to replicate Tough Mudder in nearly every way.  Defendants offer their obstacle course events under the mark "Mini Mudder" and copy the look and feel Tough Mudder's events by using the same orange color, the font of Tough Mudder's trademarked logos, the orange headbands, the structure of the event, the pledge, the post-event celebrations, and course map.  Indeed, Defendants have even been so bold as to call their events "The Tough Mudder for Kids."  During Defendants' events and on promotional video, Defendants' representatives, including Defendant Dobil, have dressed in Tough Mudder branded clothing and wore Tough Mudder's trademark orange headband.  Although Defendants' events purport to be limited to child participants, the marketing for the events is directed to Tough Mudder's target consumers, namely, adults that have participated in or would likely be interested in participating in Tough Mudder's events.  Such adults, in fact, are the target and actual purchasers of Defendants' infringing goods and services .

Despite Tough Mudder's numerous requests for Defendants to cease their unlawful conduct, Defendants refuse to stop.  Even worse, Defendants are actively encouraging third parties to similarly ignore Tough Mudder's intellectual property rights and hold their own "Mini Mudder" events.  Left with no other option, Tough Mudder brings this lawsuit to immediately

2

halt Defendants' trademark infringement, trade dress infringement, unfair competition, false designation of origin, dilution, and false advertising in violation of federal, state and common law.

## II.     PARTIES

1.      Plaintiff Tough Mudder Incorporated ("Tough Mudder") is Delaware corporation with its principal place of business located at 15 MetroTech Center, Brooklyn, New York 11201.

2.      Upon information and belief, Defendant Barry C. Dobil, Jr. d/b/a The Mini Mudder ("Dobil") is an individual resident and domicile of the State of Pennsylvania, with a principal place of business located at 5821 Ricky Ridge Trail, Orefield, Pennsylvania 18069. Upon information and belief, Dobil is the owner and CEO of The Mini Mudder.

3.      Upon information and belief, Defendant The Mini Mudder ("Mini Mudder") is an unincorporated entity operating on a parcel of land owned by Defendant Barry Dobil located at 5821 Ricky Ridge Trail, Orefield, Pennsylvania 18069.

## III.     NATURE OF THE ACTION

4.      This is an action for trademark infringement arising under Section 32 of the Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. § 1114; trademark infringement, trade dress infringement, unfair competition, false designation of origin, false description, false advertising, dilution, and cybersquatting arising under Section 43 of the Lanham Act, as amended, 15 U.S.C. § 1125; trademark infringement, trade dress infringement, and unfair competition under Pennsylvania law; and trademark dilution under the Pennsylvania Trademark Act, 54 Pa. Cons. Stat. Ann. § 1124 *et seq.*

## IV.     JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 as it involves a federal question; under 28 U.S.C. § 1338 as it involves claims arising under the

Lanham Act; and under 28 U.S.C. § 1332 as the action is between citizens of different States and the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000.00.   This Court has supplemental jurisdiction over the claims that arise under Pennsylvania law pursuant to 28 U.S.C. § 1367(a) in that they are substantially related to the claims that arise under the Lanham Act of the United States.   Furthermore, this Court has supplemental jurisdiction because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

6.      Upon information and belief, this Court has personal jurisdiction over Defendants because Defendants reside and conduct business within this District.   Defendants, therefore, are present in this judicial district and transact business and solicit business in the State of Pennsylvania, within this judicial district, and elsewhere.   This Court also has specific personal jurisdiction over Defendants based on their purposeful direction of their promotional and advertising activities and sales and offers for sale of their services to residents and customers in Pennsylvania.

7.      Further, this Court has personal jurisdiction under the Pennsylvania long-arm statute, 42 Pa. Const. Stat. Ann. § 5322 *et seq.*, because, upon information and belief, Defendants (1) transact business in Pennsylvania; (2) contract to supply services or things in Pennsylvania; (3) cause harm or tortious injury by acts or omissions in Pennsylvania; (4) have an interest in, use, or possess real property in Pennsylvania; (5) have committed violations within the jurisdiction of Pennsylvania of Pennsylvania statutes, home rule charters, local ordinances or resolutions, or rule or regulation promulgated thereunder by any government unit or of any order of court or other governmental unit; and (4) jurisdiction based on Defendants' contacts with

4

Pennsylvnia is not inconsistent with the Constitution of the State of Pennsylvania or the Constitution of the United States.

8.     Venue is proper under 28 U.S.C. § 1391.

## V.     BACKGROUND AND FACTUAL ALLEGATIONS

### A.     Tough Mudder's Endurance Challenges

9.     Tough Mudder organizes and hosts team-based endurance challenges in the United States, Canada, Europe, and Australia.

10.     Since its inception in Fall 2009, Tough Mudder has worked to successfully establish and grow its brand and goodwill at an exponential pace.

11.     In the past five years, Tough Mudder has held its obstacle course challenges throughout the United States, as well as in Canada, the United Kingdom, Ireland, Germany, New Zealand and Australia.  By the end of 2015, Tough Mudder will have held over 200 events on four continents.

12.     Tough Mudder held three U.S. challenges in 2010, 14 U.S. challenges in 2011, 28 U.S. challenges in 2012, 36 U.S. challenges in 2013, and 40 U.S. challenges in 2014.

13.     In 2015, Tough Mudder has scheduled over 50 challenges through the United States, Canada, the United Kingdom, Australia, and Germany. By the end of 2015, approximately two million individuals will have participated in a Tough Mudder challenge.

14.     Since 2010, Tough Mudder has held and/or has scheduled 8 events in Pennsylvania, including, without limitation, events in:

- Macungie, Pennsylvania (Allentown area), May 2 and 3, 2010;

- Longswamp Township, Pennsylvania (Allentown area), April 9 and 10, 2011;

- Poconos Manor, Pennsylvania, April 28 and 29, 2012;

- Poconos Manor, Pennsylvania, May 12 and 13, 2012;

- Heidelberg Township, Pennsylvania, June 1 and 2, 2013;

- Long Pond, Pennsylvania (Poconos area), April 19 and 20, 2014;

- Slippery Rock, Pennsylvania (Pittsburgh area), August 29 and 30, 2015;

- Coatesville, Pennsylvania (Philadelphia area), October 17 and 18, 2015.

15.     Tough Mudder also organizes and hosts team-based endurance challenges under its MUDDERELLA® trademark.

16.     MUDDERELLA® events are 5 to 7 mile obstacle courses, designed by women for women.

17.     Tough Mudder held one U.S. MUDDERELLA® event in 2013 and 7 U.S. MUDDERELLA® events in 2014.

18.     In 2015, Tough Mudder has scheduled 14 MUDDERELLA® events through the United States, Canada, and Australia.

19.     Since 2013, Tough Mudder has held and/or has scheduled 3 MUDDERELLA® events in Pennsylvania, including, without limitation, events in:

- Tamiment, Pennsylvania, September 21, 2013;

- Kennett Square, Pennsylvania, August 16, 2014; and

- Slippery Rock, Pennsylvania, September 12, 2015.

20.     Tough Mudder also plans to organize and host team-based endurance challenges under its URBAN MUDDER trademark.

21.     URBAN MUDDER events are 5 mile city-based obstacle courses, and are designed to be located in or near major cities.

22.     Tough Mudder's first URBAN MUDDER event will take place in New York, New York on July 25, 2015.

23.     Tough Mudder is currently accepting preregistration for a future URBAN MUDDER event planned for Philadelphia, Pennsylvania.

24.     Tough Mudder's high-quality endurance challenges, and the sense of teamwork and camaraderie experienced during such challenges, fosters customer loyalty among Tough Mudder participants.  Many of Tough Mudder's customers are repeat participants, meaning they have registered for and/or completed at least two endurance challenges.  Tough Mudder maintains ongoing business relationships with a significant portion of its customer base, both with repeat registrations for endurance challenges, as well as purchases of Tough Mudder's accessories, apparel, training gear, and other branded merchandise.  This is further evidenced by the Tough Mudder participants who have chosen to tattoo their bodies with the Tough Mudder trademarks.  A true and correct copy of a blog post appearing on Tough Mudder's Mudder Nation blog, dated November 27, 2012 and depicting participants with Tough Mudder tattoos, is incorporated by reference and attached hereto as **Exhibit 1**.

25.     Further, Tough Mudder receives many valuable referrals based upon word-of-mouth advertising from participants to prospective customers.

26.     There have been nearly two million registrations for Tough Mudder challenges during the last five years.

27.     Tough Mudder's goods and services, as well as its trademarks and preeminent position in the market, have been recognized by numerous well-known and highly-respected periodicals and news media outlets, including, but not limited to: *The New York Times*, *The Wall Street Journal*, *National Geographic*, *The Daily News*, *Sports Illustrated*, *Men's Fitness*, *The Examiner*, *The Huffington Post*, CNN, NBC, ABC News, ESPN, Forbes.com, Business Insider and Fox News.

28.    Tough Mudder has used and continues to promote its endurance challenges prominently in traditional print advertising and other media channels.  As of February 13, 2015, Tough Mudder has spent over $150,000 on advertising throughout the United States in traditional print media and radio.

29.    Tough Mudder has also spent considerable resources in advertising on the Internet.  As of February 13, 2015, Tough Mudder has invested over $32 million in online advertisements.  Tough Mudder created its Facebook.com webpage ("Facebook page") on January 11, 2010, and has accrued over 4.1 million "fans" on its Facebook page to date.  Tough Mudder's website located at www.toughmudder.com went live on January 26, 2010, and has accrued more than 51.2 million unique visitors to date.

30.    Individuals who wish to participate in a Tough Mudder challenge must register through Tough Mudder's website, www.toughmudder.com (the "Tough Mudder Website"), which is incorporated by reference herein.  True and correct copies of screenshots of the Tough Mudder Website are incorporated by reference and attached hereto as collective **Exhibit 2**.

31.    Tough Mudder's challenges are promoted to the public nine to twelve months prior to the challenge, and the bulk of its sales occur between three and six months before each challenge.

32.    Tough Mudder's events have been sponsored by the U.S. Army Reserve, and such prominent companies as Wheaties®, CamelBak®, Advil®, Degree™, Under Armour®, and Dos Equis®, among others.

33.    Since 2009, Tough Mudder has helped raise more than $6.5 Million for the Wounded Warrior Project, an organization supporting thousands of warriors returning from the battlefield.

**B.      The Overall Look And Feel Of Tough Mudder's Endurance Challenges**

34.      After investing extensive money, time and research, Tough Mudder has devised a unique multi-mile mud obstacle course designed to test participants' strength, stamina, mental grit, and foster a sense of teamwork and camaraderie among participants.  Participants typically join together with friends or colleagues to complete these challenges, which require and reward teamwork.

35.      As such, Tough Mudder and its trademarks and trade dresses are associated not only with high-quality, well-run events, but also with an overarching philosophy grounded in teamwork, camaraderie, and fun in the face of challenging obstacles.

36.      Tough Mudder's obstacles and challenges are unique to its courses.  Tough Mudder's endurance challenges follow roughly the same format, which contributes to the overall look and feel and total impression of Tough Mudder's events.

37.      The average Tough Mudder course is 10 to 12 miles long, and incorporates 20 to 25 military-style obstacles.  Examples of obstacles include, but are not limited to, monkey bars, crawling under barbed wire, crawling through a series of pipes, jumping into icy water, and moving through a field of electrified wires that provide 10,000 volts of electricity.

38.      Those participants who complete a Tough Mudder challenge receive a distinctive orange headband, and complimentary beer.

39.      The overall course is designed to be physically and mentally challenging, but differs from other obstacle course events in that Tough Mudder's events foster a deep sense of camaraderie driven by the many obstacles that may require teamwork to overcome.

40.      While the order of its obstacles may change due to the specific terrain of the event location, Tough Mudder's endurance challenges incorporate many of the same signature

obstacles and format elements in each event, giving rise to a distinctive overall look and feel and total impression of Tough Mudder's endurance challenges.

41.     Contributing to the overall look and feel and total impression of Tough Mudder's endurance challenges are the suggestive, cheeky, and/or sometimes coarse names Tough Mudder uses to designate each obstacle.  Tough Mudder utilizes this type of naming system in order to encourage the sense of lighthearted camaraderie and "down in the trenches" team mentality among all of its participants.

42.     Tough Mudder's distinctive and signature obstacles include, without limitation:

- Arctic Enema®, an obstacle requiring participants to jump into and swim through a container full of ice, including submerging completely to swim under a wooden plank;

- Bale Bonds®, an obstacle requiring participants to climb over stacks of hale bales;

- Balls to the Wall$^{SM}$, an obstacle requiring participants to scale a 15 foot wall using a muddy rope;

- Berlins Walls®, an obstacle requiring participants to scale three 12 foot walls;

- Boa Constrictor®, an obstacle requiring participants to crawl through a series of pipes angled downward and uphill through mud;

- Cliffhanger®, an obstacle requiring participants to climb a 40-plus foot cliff of slippery mud;

- Electric Eel®, an obstacle requiring participants to slide on their belly through frigid water under live wires;

- Electroshock Therapy®, an obstacle requiring participants to attempt to run through a field of live wires charged with 10,000 volts of electricity;

- Everest®, an obstacle requiring participants to run up a quarter-pipe that has been coated in mud and grease;

- Fire Walker®, an obstacle requiring participants to run among pits of blazing firewood and leap over the final pit of fire;

10

- Funky Monkey®, an obstacle requiring participants to climb across scissor trusses with monkey bars that follow the plane of the bottom chord over icy water;

- Greased Lightning®, an obstacle requiring participants to slide down a slippery rubber slope into an icy pool of water;

- Hold Your Wood®, an obstacle requiring participants to carry heavy logs through a section of the course;

- Just the Tip[SM], an obstacle requiring participants to scale a wall using just their fingertips and toes to get across;

- King of the Mountain[SM], an obstacle requiring participants to climb a 20 foot high pyramid made of bales of hay;

- Kiss of Mud®, an obstacle requiring participants to crawl through mud under barbed wire set 8 inches above the ground;

- Mud Mile®, an obstacle requiring participants to run through a mile of waist-deep mud;

- Twinkle Toes[SM], an obstacle requiring participants to traverse a narrow wooden beam over icy water; and

- Walk the Plank®, an obstacle requiring participants to leap off a 12-15 foot ledge into water.

A true and correct copy of a representative screenshot of Tough Mudder's obstacles advertised on the Tough Mudder Website is incorporated by reference and attached hereto as **Exhibit 3**.

43.     Following each Tough Mudder endurance challenge, Tough Mudder hosts a distinctive post-party and awards ceremony.  Both before and during the post party, participants and spectators can partake in a free head shave to receive either a mullet or a mohawk haircut.

44.     As part of the post party and overall marketing campaign, Tough Mudder also offers onsite tattoos to participants.  To date, over 5,000 Tough Mudder participants have received Tough Mudder tattoos.  Those participants who receive a Tough Mudder tattoo, whether received at a Tough Mudder event or otherwise, may also receive one free entry to a Tough Mudder event of his or her choice.

45.     The combination of Tough Mudder's signature obstacles, coupled with its tongue-in-cheek obstacle naming system, its distinctive marketing campaign, its prominent use of the orange and black color scheme in its marketing campaign, its overarching philosophy grounded in teamwork, camaraderie, and fun in the face of challenging obstacles, and its consistent event format elements, including, without limitation, beginning each event with a rousing welcome speech "pep talk" and recitation of the Tough Mudder pledge, and ending each event with the award of a Tough Mudder t-shirt, distinctive orange headband, and celebratory beer, and offering such post-challenge festivities and marketing tactics as offering free mohawks and Tough Mudder tattoos, collectively and cumulatively creates the total impression of a unique overall "look and feel" to Tough Mudder's events (the "Tough Mudder Trade Dress").



**THE MUDDER PLEDGE**
- I understand that Tough Mudder is not a race but a challenge.
- I put teamwork and camaraderie before my course time.
- I do not whine – kids whine.
- I help my fellow mudders complete the course.
- I overcome all fears.

Figure 1: The TOUGH MUDDER® Pledge

46.     In addition to the overall look and feel and total impression of Tough Mudder's endurance challenges, Tough Mudder's signature obstacles have become famous through the wide recognition of the general consuming public of the United States as a designation of the source of services and goods of and originating from Tough Mudder.

47.     Due to the overarching sense of teamwork and camaraderie fostered by the Tough Mudder Trade Dress, Tough Mudder participants are often referred to as "Mudders" or, collectively, as the "Mudder Nation."

C.    **The Tough Mudder Family Of Marks**

48.    Commencing at least as early as March 1, 2009, Tough Mudder has used the "TOUGH MUDDER" mark continually nationwide in interstate commerce to identify certain of its goods and services and to distinguish such goods and services from those offered and provided by others.

49.    Commencing at least as early as February 2011, Tough Mudder has used the "MUDDER" mark continually nationwide in interstate commerce to identify certain of its goods and services and to distinguish such goods and services from those offered and provided by others.

50.    Tough Mudder is the owner of a federal trademark registration, U.S. Reg. No. 3,810,118, for the trademark TOUGH MUDDER (the "TOUGH MUDDER® Mark") for use as a source and designation of origin in connection with "organizing and conducting sporting events and post-event parties, namely, mud runs, cross-country races, military style obstacle courses, outdoor swimming events and music festivals" (the "'118 Registration").  A true and correct copy of the '118 Registration is incorporated by reference and attached hereto as **Exhibit 4**.

51.    The '118 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of Tough Mudder's exclusive right to own and use the TOUGH MUDDER® Mark in connection with the goods and services specified in the '118 Registration.

52.    Tough Mudder is the owner of a federal trademark registration, U.S. Reg. No. 4,131,912, for the trademark TOUGH MUDDER® and design depicting the silhouette of a man running through fire, to the right of the literal element "TOUGH MUDDER" (the "TOUGH MUDDER® Design Mark"), for use as a source and designation of origin in connection with "organizing sporting events, namely, mud runs, cross-country races, military style obstacle

13

courses and outdoor swimming events" (the "'912 Registration"). A true and correct copy of the '912 Registration is incorporated by reference and attached hereto as **Exhibit 5**.



Figure 2: The TOUGH MUDDER® Design Mark

53. The '912 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of Tough Mudder's exclusive right to own and use the TOUGH MUDDER® Design Mark in connection with the goods and services specified in the '912 Registration.

54. Tough Mudder is the owner of a federal trademark registration, U.S. Reg. No. 4,674,215, for the color orange as a solid background on physical and electronic advertising banners and signs (the "TOUGH MUDDER® Color Mark"), for use as a source of designation and origin in connection with "organizing sporting events, namely, mud runs, cross-country races, military style obstacle courses and outdoor swimming events" (the "'215 Registration"). The color orange is the claimed feature of the mark. A true and copy of the '215 Registration is incorporated by reference and attached hereto as **Exhibit 6**.



Figure 3: The TOUGH MUDDER® Color Mark

14

55.     The '215 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of Tough Mudder's exclusive right to own and use the TOUGH MUDDER® Color Mark in connection with the goods and services specified in the '609 Registration.

56.     Tough Mudder is the owner of a federal trademark registration, U.S. Reg. No. 4,439,609, for the trademark TOUGH MUDDER and design, depicting an orange sweatband style headband with the wording "TOUGH MUDDER" in black appearing thereon (the "TOUGH MUDDER® Sweatband Mark"), for use as a source and designation of origin in connection with "[o]rganizing sporting events, namely, mud runs, cross-country races, military style obstacle courses and outdoor swimming events" (the "'609 Registration").   The colors orange and black are claimed as a feature of the mark.   A true and correct copy of the '609 Registration is incorporated by reference and attached hereto as **Exhibit 7**.



Figure 4: The TOUGH MUDDER® Sweatband Mark

57.     The '609 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of Tough Mudder's exclusive right to own and use the TOUGH MUDDER® Sweatband Mark in connection with the goods and services specified in the '609 Registration.

58.     Tough Mudder is the owner of a federal trademark registration, U.S. Reg. No. 4,527,038, for the trademark MUDDER® (the "MUDDER® Mark"), for use as a source and designation of origin in connection with "[o]rganizing sporting events, namely, mud runs, cross-country races, military style obstacle courses and outdoor swimming events" (the "'038

Registration").  A true and correct copy of the '038 Registration is incorporated by reference and attached hereto as **Exhibit 8**.

59.     The '038 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of Tough Mudder's exclusive right to own and use the MUDDER® Mark in connection with the goods and services specified in the '038 Registration.

60.     Tough Mudder is the owner of a federal trademark registration, U.S. Reg. No. 4,131,913, for the trademark WORLD'S TOUGHEST MUDDER® and design depicting the silhouette of a man triumphantly raising his arms, standing on a pedestal with the literal element "WORLD'S TOUGHEST MUDDER" (the "WORLD'S TOUGHEST MUDDER® Mark"), for use as a source and designation of origin in connection with "organizing sporting events, namely, mud runs, cross-country races, military style obstacle courses and outdoor swimming events" (the "'913 Registration").  A true and correct copy of the '913 Registration is incorporated by reference and attached hereto as **Exhibit 9**.



Figure 5: The WORLD'S TOUGHEST MUDDER® Mark

61.     The '913 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of Tough Mudder's exclusive right to own and use the WORLD'S TOUGHEST MUDDER® Mark in connection with the goods and services specified in the '913 Registration.

62.     Tough Mudder is the owner of a federal trademark registration, U.S. Reg. No. 4,241,510, for the trademark MUDDER CORPS® (the "MUDDER CORPS® Mark"), for use as a source and designation of origin in connection with "[e]ntertainment in the nature of a club formed to allow volunteers to help arrange, organize, operate and conduct endurance and obstacle challenges, events and training" (the "'510 Registration").  A true and correct copy of the '510 Registration is incorporated by reference and attached hereto as **Exhibit 10**.

63.     The '510 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of Tough Mudder's exclusive right to own and use the MUDDER CORPS® Mark in connection with the goods and services specified in the '510 Registration.

64.     Tough Mudder is the owner of a federal trademark registration, U.S. Reg. No. 4,241,513, for the trademark MUDDER NATION® (the "MUDDER NATION® Mark"), for use as a source and designation of origin in connection with "[e]ntertainment services, namely, providing an entertainment website featuring information and blogs concerning endurance and obstacle challenges, events and training" (the "'513 Registration").  A true and correct copy of the '513 Registration is incorporated by reference and attached hereto as **Exhibit 11**.

65.     The '513 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of Tough Mudder's exclusive right to own and use the MUDDER NATION® Mark in connection with the goods and services specified in the '513 Registration.

66.     Tough Mudder is the owner of a federal trademark registration, U.S. Reg. No. 4,241,512, for the trademark MUDDER NATION® and design depicting the silhouettes of five men who each have on arm raised in the air to the right of the literal element "MUDDER

NATION" (the "MUDDER NATION® Design mark," depicted below), for use as a source and designation of origin in connection with "[e]ntertainment services, namely, providing an entertainment website featuring information and blogs concerning endurance and obstacle challenges, events and training" (the "'512 Registration").  A true and correct copy of the '512 Registration is incorporated by reference and attached hereto as **Exhibit 12**.



Figure 6: The MUDDER NATION® Design Mark

67.     The '512 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of Tough Mudder's exclusive right to own and use the MUDDER NATION® Design Mark in connection with the goods and services specified in the '512 Registration.

68.     Tough Mudder is the owner of a federal trademark registration, U.S. Reg. No. 4,552,917, for the trademark MUDDERELLA® (the "MUDDERELLA® Mark"), for use as a source and designation of origin in connection with, among other goods and services, "[o]rganizing sporting events, namely, mud runs, cross-country races, military style obstacle courses and outdoor swimming events" (the "'917 Registration").  A true and correct copy of the '917 Registration is incorporated by reference and attached hereto as **Exhibit 13**.

69.     The '917 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of Tough Mudder's exclusive right to own and use the MUDDERELLA® Mark in connection with the goods and services specified in the '917 Registration.

70.     Tough Mudder is the owner of a federal trademark registration, U.S. Reg. No. 4,553,072, for the trademark MUDDERELLA® and design depicting the silhouette of a woman with hands on hips with a splatter pattern behind the woman's silhouette above the literal element (the "MUDDERELLA® Design Mark"), for use as a source and designation of origin in connection with, among other goods and services, "[o]rganizing sporting events, namely, mud runs, cross-country races, military style obstacle courses and outdoor swimming events" (the "'072 Registration").   A true and correct copy of the '072 Registration is incorporated by reference and attached hereto as **Exhibit 14**.



Figure 7: The MUDDERELLA® Design Mark

71.     The '072 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of Tough Mudder's exclusive right to own and use the MUDDERELLA® Design Mark in connection with the goods and services specified in the '072 Registration.

72.     Tough Mudder is the owner of a federal trademark application, Application Serial No. 86/262,485, for the trademark MUDDER LEGION (the "MUDDER LEGION Mark"), for use in connection with, among other goods and services, "[p]roviding a web site featuring information on exercise and fitness; [p]roviding an interactive website featuring information and links relating to fitness" (the '485 Application").

73.     The USPTO has issued a notice of allowance for the '485 Application.  A true and correct copy of the Notice of Allowance is incorporated by reference and attached hereto as **Exhibit 15**.

74.     Tough Mudder is the owner of a federal trademark application, Application Serial No. 86/262,481, for the trademark MUDDER LEGION and design depicting the silhouette of a group of five people all wearing headbands posing in front of fire above the stylized wording "MUDDER LEGION," with the fire extending beyond the figures to their left and right (the "MUDDER LEGION Design Mark"), for use in connection with, among other goods and services, "[p]roviding a website featuring information on exercise and fitness; [p]roviding an interactive website featuring information and links relating to fitness" (the "'481 Application").



Figure 8: The MUDDER LEGION Design Mark

75.     The USPTO has issued a notice of allowance for the '481 Application.  A true and correct copy of the Notice of Allowance is incorporated by reference and attached hereto as **Exhibit 16**.

76.     Tough Mudder is the owner of a federal trademark application, Application No. 86/315,762, for the URBAN MUDDER trademark (the "URBAN MUDDER Mark"), for use in connection with, among other goods and services, "[o]rganizing sporting events, namely, mud runs, cross-country races, military style obstacle courses and outdoor swimming events" (the "'762 Application").

77.     The USPTO has issued a notice of allowance for the '762 Application.  A true and correct copy of the Notice of Allowance is incorporated by reference and attached hereto as **Exhibit 17**.

78.     Tough Mudder operates a website located at www.muddernation.com, which is a Tough Mudder community site where participants can connect and talk about events, training, and other topics.

79.     Tough Mudder also has established through continuous, long-term use in commerce common law rights in the MUDDER Mark; TOUGH MUDDER Mark; the TOUGH MUDDER Design Mark; the TOUGH MUDDER Color Mark; the TOUGH MUDDER Sweatband Mark, the WORLD'S TOUGHEST MUDDER Mark; the MUDDER CORPS Mark; the MUDDER NATION Mark; the MUDDER NATION Design Mark; the MUDDERELLA Mark, the MUDDERELLA Design Mark, the MUDDER LEGION Mark, the MUDDER LEGION Design Mark, and the use of the phrase "TOUGH MUDDER" and as a trade name or part of a trade name.

80.     The aforementioned federally-registered and common law marks are hereinafter referred to collectively as the "MUDDER Marks".

81.     Tough Mudder utilizes a distinctive color scheme consisting of the colors orange and black, as demonstrated in the TOUGH MUDDER® Color Mark and Tough Mudder's marketing and promotional materials for its Tough Mudder endurance challenges.  True and correct copies of select pages from Tough Mudder's Facebook page are incorporated by reference and attached hereto as collective **Exhibit 18**; *see also*, **Exhibit 2**.

82.     Third parties have recognized the distinctive nature of the overall look and feel and total impression of the Tough Mudder Trade Dress embodied in Tough Mudder's endurance challenges.

83.     For example, an article appearing on ObstacleFit.com recognized Tough Mudder's events as "the most high-profile event in the industry," and noted "Tough Mudder's signature obstacles, including an ice plunge, electroshock crawl, 12-foot leap into water, and a run up a half pipe" and the overall "Tough Mudder feel."   A true and correct copy of the ObstacleFit.com article, dated April 13, 2013, is incorporated by reference and attached hereto as **Exhibit 19**.

84.     An article from the Huffington Post recognized the distinctive welcoming speech given at the start of Tough Mudder's events and the resulting sense of adrenaline fostered by such speeches, noting that, "[i]f you decide to do a Tough Mudder, you will wind up on one knee, listening to a pep talk by the famous Mudder voice;" and that "[y]ou will then jump up and down, huzzah and hurrah until you are high enough on adrenaline to begin your race."  A true and correct copy of the Huffington Post article, dated June 12, 2013, is incorporated by reference and attached hereto as **Exhibit 20**.

85.     The Huffington Post article also noted that Tough Mudder's events give its participants a sense of "superhuman strength you never knew you had.  . . . You might not actually have that superhuman strength you sometimes feel during the race, but you still feel it." *See* **Exhibit 20**.

86.     An article from Men's Fitness noted that Tough Mudder's endurance challenges – "arguably the world's best known obstacle course and adventure event" – follow the general layout of elements embodied by the Tough Mudder Trade Dress: "[t]he layout is simple: each

10-12 mile obstacle course contains hills, mud, water, ropes, walls, electric shocks, and fire," including "the electric shock gauntlet, buttered up monkey bars, and a frigid cold ice dumpster." Further, the article recognized "[t]he Tough Mudder Pledge recited by all participants before every challenge" which "demands a 'no man left behind' attitude and forbids whining." A true and correct copy of the Men's Fitness article is incorporated by reference and attached hereto as **Exhibit 21**.

87.    Third parties have recognized the overall look and feel and total impression embodied in the Tough Mudder Trade Dress, despite the variations in courses due to terrain.

88.    For example, an article from Well & Good NYC noted that "[t]he courses are always 10-12 miles with 20-25 obstacles, and participants are not timed.  . . . No course is ever the same and terrain dictates a lot, but you'll almost always encounter obstacles that include fire, electric shocks, scaling walls, crawling under barbed wire, and ice water." A true and correct copy of the Well & Good NYC article, dated August 19, 2013, is incorporated by reference and attached hereto as **Exhibit 22**.

89.    An article from Endurance Sports Florida recognized the overall look and feel and total impression embodied in the Tough Mudder Trade Dress, noting that "Tough Mudder creates the bad-ass vibe better than anyone in the industry." The article further takes note of "Tough Mudder's infamous Chernobyl Jacuzzi" obstacle (subsequently renamed Arctic Enema®), and states that:

- "dozens of athletes took advantage of free mohawks.  Others went for the onsite Tough Mudder tattoo;"

- "[t]he signature orange finisher's headband is better than any medal;" and

- "I don't know the name of the guy Tough Mudder uses as the pre-race emcee, but I want him at my next party."

A true and correct copy of the Endurance Sports Florida article, dated December 4, 2011, is incorporated by reference and attached hereto as **Exhibit 23**.

90.     There are several obstacle course organizers in the industry, but each competing organizer has a distinctive theme and style.  Tough Mudder's overall look and feel embodied in the Tough Mudder Trade Dress conveys a theme of military-style obstacles with suggestive, cheeky, and/or sometimes coarse names and designed by British Special Forces, with an emphasis on fire, teamwork, a "no man left behind" mentality, and camaraderie and prominent and consistent use of the orange and black color scheme.  This distinctive theme and style is displayed on the Tough Mudder Website and Facebook page, reinforced in its marketing campaign, and conveyed through its signature obstacles and event format elements.

91.     The Tough Mudder Trade Dress associated with Tough Mudder's endurance challenges is nonfunctional.  Rather, the overall look and feel and total impression conveyed by the Tough Mudder Trade Dress is completely different from the overall look and feel and total impression conveyed by other obstacle course organizers in the industry.  By means of example and not limitation, other obstacle course competitors utilize a Nordic-themed look and feel (Warrior Dash), a Spartan-themed look and feel (Spartan Race), a post-apocalyptic-themed look and feel (Zombie Mud Run).  True and correct copies of screen shots of the homepages of these competitors' respective websites are incorporated by reference and attached hereto as collective **Exhibit 24**.

92.     The Tough Mudder Trade Dress associated with Tough Mudder's endurance challenges is inherently distinctive and/or has acquired secondary meaning and become a designation of source and origin of Tough Mudder's high quality endurance challenges and services.

93.     Tough Mudder has continuously used the MUDDER Marks and the Tough Mudder Trade Dress in the United States as a symbol of Tough Mudder as the source and origin for high quality endurance and obstacle challenges and sporting events, including, but not limited to, mud runs, cross-country races, military style obstacle courses and outdoor swimming events, and related goods and services.

94.     Tough Mudder's products and services have been widely advertised or promoted and extensively offered for sale throughout the United States, including, without limitation, within the State of Pennsylvania.

95.     Tough Mudder has expended considerable time, resources, and effort in promoting the MUDDER Marks and Tough Mudder Trade Dress and developing substantial goodwill associated therewith.

96.     The MUDDER Marks and Tough Mudder Trade Dress are suggestive and inherently distinctive when used in conjunction with Tough Mudder's goods and services.

97.     Due to the continual use of the MUDDER Marks and Tough Mudder Trade Dress by Tough Mudder, the MUDDER Marks and Tough Mudder Trade Dress have come to indicate a single source of Tough Mudder's goods and services.  The MUDDER Marks and Tough Mudder Trade Dress have further come to indicate Tough Mudder as the single source of such quality goods and services.

98.     As a result of the long and exclusive use by Tough Mudder of its MUDDER Marks and Tough Mudder Trade Dress, the large sales under the MUDDER Marks and Tough Mudder Trade Dress, and the large amount of money spent or foregone for advertising and promotion of its goods and services, the MUDDER Marks and Tough Mudder Trade Dress have become, through widespread and favorable public acceptance and recognition, an exclusive asset

of substantial value as a symbol of Tough Mudder, its quality products and services, and its goodwill.

99.      As a result of the long and exclusive use by Tough Mudder of its MUDDER Marks and Tough Mudder Trade Dress, the large sales under the MUDDER Marks and Tough Mudder Trade Dress, and the large amount of money spent or foregone for advertising and promotion of its goods and services,, the MUDDER Marks and Tough Mudder Trade Dress have become famous through the wide recognition of the general consuming public of the United States as a designation of the source of services and goods of and originating from Tough Mudder.

100.      Tough Mudder also expends significant time and resources in researching new and potential event sites.  Tough Mudder employs dedicated teams to scout and procure potential venues, and conducts extensive market analysis to determine whether there is a suitable location to build its course, as well as demand and a receptive consumer market for Tough Mudder's endurance challenges in various areas around the United States.

**D.      Defendants' Mini Mudder Obstacle Course Events**

101.      Defendants are relative newcomers to the obstacle course challenge industry. Upon information and belief, Defendants put on their first event on September 29, 2012 in Orefield, Pennsylvania.  Defendants followed that event with a second event on July 5, 2013, also in Orefield, Pennsylvania.

102.      Upon information and belief, Defendants own the registration for the domain name www.theminimudder.com, which redirects the user to Wordpress website theminimudder.wordpress.com (the "Mini Mudder Website").  A true and correct copy of the WHOIS information for the Mini Mudder Website domain name is incorporated by reference and attached hereto as **Exhibit 25**.

103.     Defendants advertise predominantly via their Mini Mudder Website, Facebook page, https://www.facebook.com/TheMiniMudder (the "Mini Mudder Facebook Page"), and YouTube page under the username Barry Dobil (the "Mini Mudder YouTube Page").  True and correct copies of screenshots from the Mini Mudder Website, Mini Mudder Facebook Page, and Mini Mudder YouTube Page are incorporated by reference and attached hereto as **Exhibits 26**, **27**, and **28**, respectively.

104.     As stated on the Mini Mudder Website, Defendants began doing business as Mini Mudder because "adults were having all the fun as mud themed races and military style obstacle courses became all the rage.  There was one problem: these mud run obstacle races were only open to adults."

105.     Defendants' obstacle course events are "an option for kids looking to compete in their own mud run obstacle course."

106.     Upon information and belief, Defendants are planning additional events for 2015.

**E.     Defendants' Infringing And Unfair Acts**

107.     Rather than investing the resources necessary to create in the market a unique identity for their own events, Defendants have sought to unfairly trade off on Tough Mudder's valuable brand, reputation, and goodwill.  When Defendants began promoting their obstacle course events, Defendants had copied the branding, theming, styling, and functionality of Tough Mudder's website and Facebook page.

108.     Defendants originally promoted and marketed their obstacle course events as "The Mini Mudder – A Tough Mudder for Kids."  True and correct copies of screenshots of former iterations of Defendants' website, captured by The Internet Archive Wayback Machine, are incorporated by reference and attached hereto as **Exhibit 29**.



Figure 9: Screenshot of the Mini Mudder Website captured byTthe Internet Archive Wayback Machine



Figure 10: Screenshot of Defendants' post on the Mini Mudder Facebook Page

109.     Without Tough Mudder's knowledge or consent, Defendants commenced to use, and are currently using, in interstate commerce and commerce affecting interstate commerce, the phrase "MINI MUDDER" (the "Infringing Mark") – often in large, bold fonts in predominantly the same orange and black color scheme utilized by Tough Mudder – as a trademark, trade name, and domain name in connection with selling, offering, promoting, or advertising a series of outdoor obstacle course events.

110.     Defendants also have embarked upon a blatant campaign to copy or imitate a combination of several elements of the Tough Trade Dress, including, without limitation, Tough Mudder's event format elements, signature obstacles and obstacle names, orange and black color scheme, overarching philosophy, marketing strategies, and the TOUGH MUDDER® Color Mark in advertising and promotional materials.

29

111.      Without Tough Mudder's knowledge or consent, Defendants commenced to use, and are currently using, in interstate commerce and commerce affecting interstate commerce, an overall look and feel for their Mini Mudder events that incorporate prominent elements of the Tough Mudder Trade Dress, including, without limitation, imitations of Tough Mudder's signature obstacles, imitations of Tough Mudder's tongue-in-cheek obstacle naming system, the prominent use of the orange and black color scheme and the TOUGH MUDDER® Color Mark in their marketing campaign, use of the same font as used by Tough Mudder, imitations of Tough Mudder's course maps, an overarching philosophy grounded in teamwork, camaraderie, and fun in the face of challenging obstacles, and their use of Tough Mudder event format elements, including, without limitation, beginning each event with a rousing welcome speech "pep talk" and recitation of the a Mini Mudder pledge, and ending each event with a Mini Mudder award, distinctive headband, celebratory Gatorade® drink and ice cream sandwich or snack, and offering such post-challenge festivities as "[d]inner, drinks, fire pit, awesomeness" (the "Infringing Trade Dress").

112.      Upon information and belief, Defendants begin each of its obstacle course events with a welcome speech designed to imitate the famous Tough Mudder welcome speech and pledge recitation.

| 1:00 | Registration |
|------|-------------|
| 1:30 | Mr Ed's Team Stretch |
| All volunteers will be briefed on their obstacle assignments | |
| 1:50 | Star Spangled Banner |
| 1:55 | The Mini Mudder Pledge |
| 2:00 | Start Time |
| 3:00 | Finish- All those who finish will receive an award, Gatorade and snack |
| 5:00 | Dinner, drinks, fire pit, awesomeness. We'll provide burgers, dogs, wine and beer… if you want to bring a side or dessert, feel free. |

Figure 11: 2012 Mini Mudder Event Itinerary

**09:00**  Mini Mudder Registration begins.  Do not be late.
Coffee and bagels will be served
**09:30**  Mini Mudder team stretch led by Mr. Ed
Mini Mudder volunteer briefing
**09:50**  Star Spangled Banner sung by Mr Winn
**09:55**  Mini Mudder Pledge
**10:00  Mini Mudder START**
**12:00**  Mini Mudder Awards.  Hose down/Clean up.
**15:00  Post Mini Mudder Party –** Dinner, drinks, fire pit, awesomeness.  We'll provide plenty of food, wine and beer… if you want to bring a side or dessert you can coordinate that with Lindsay (email here)

Figure 12: 2013 Mini Mudder Event Itinerary



THE MUDDER PLEDGE
- I understand that Tough Mudder is not a race but a challenge.
- I put teamwork and camaraderie before my course time.
- I do not whine – kids whine.
- I help my fellow mudders complete the course.
- I overcome all fears.

THE MINI MUDDER PLEDGE

TO PARTICIPATE IN THE MINI MUDDER
… I WILL WORK HARD
… I WILL GET DIRTY, WET AND MUDDY
… I MAY GET HOT OR COLD AND TIRED
… BUT I WILL NOT COMPLAIN
… I WILL HELP MY FRIENDS
… I WILL NEVER GIVE UP
… AND I WILL HAVE FUN!

Figure 13: Comparison of Tough Mudder's pledge (left) and Defendants' pledge (right)

113.     Further, many of Defendants' obstacles are intentionally inspired by or confusingly similar to Tough Mudder's signature obstacles.  Specifically, it appears that at least 15 of the 25 obstacles advertised on the Mini Mudder Website correlate to one or more of Tough Mudder's signature obstacles, and are colorable imitations of and confusingly similar to such signature obstacles included in the Tough Mudder Trade Dress.

114.     A non-exhaustive comparison chart depicting Tough Mudder's signature obstacle and Defendants' corresponding imitation obstacle(s) and/or description (the "Comparison Chart"), is incorporated by reference and attached hereto as **Exhibit 30**.

115.     As demonstrated by the Mini Mudder Website and the figure depicted below, Defendants also employ similar naming conventions as Tough Mudder, specifically, designating obstacles with tongue-in-cheek names.



Figure 14: List of Mini Mudder Obstacles

116.     Defendants also display a "course map" on the Mini Mudder Website that imitates Tough Mudder's own course maps, which embody elements of the Tough Mudder Trade Dress, including, without limitation, prominent use of the orange and black color scheme and TOUGH MUDDER® Color Mark.   A true and correct copy of the Mini Mudder Course Map are incorporated by referenced and attached hereto as **Exhibit 31**.



Figure 15: Sample TOUGH MUDDER® Course Map



Figure 16: Mini Mudder Course Map

117.    Defendants also seek to create a similar sense of teamwork and camaraderie as embodied in the Tough Mudder Trade Dress.  As stated on the Mini Mudder Website, as part of the Mini Mudder pledge, participants pledge to "help my friends."

118.    Moreover, like Tough Mudder, upon information and belief, Defendants end each event with an award and celebratory beverage or snack to their participants, as well as a post party with similar festivities as those offered by Tough Mudder.

119.    Upon information and belief, for their 2013 Mini Mudder event, Defendants changed their practice of passing out pink and black sweatbands to event participants to passing

33

out orange sweatbands, like that depicted in the TOUGH MUDDER® Sweatband Mark and using the TOUGH MUDDER® Color Mark.  True and correct copies of photographs taken of the 2013 Mini Mudder event, available on the Mini Mudder Website, are incorporated by reference and attached hereto as **Exhibit 32**.



Figure 17: Photographs of participants wearing orange sweatbands during 2013 Mini Mudder event

120.    Defendants also sell and/or distribute marketing/promotional materials that feature the orange and black color scheme and/or TOUGH MUDDER® Color Mark.  Through the "Gear" and "Additional Gear" links on the Mini Mudder Website (which redirects to a Mini Mudder branded third party website – http://theminimudder.logosoftwear.com), Defendants currently offer for sale apparel, drawstring bags, and duffle bags in prominent orange and/or orange and black font using the Infringing Mark.  Photographs of products offered in the "Mini Mudder Shop" are reproduced below and incorporated by reference and attached hereto as **Exhibit 33**:



Figure 18: The Mini Mudder branded banner for the Mini Mudder Shop

34



Figure 19: Jacket offered for sale by Defendants



Figure 20: Drawstring bag offered for sale by Defendants



Figure 21: Zip up sweatshirt offered for sale by Defendants



Figure 22: Duffle bag offered for sale by Defendants



Figure 23: T-shirt offered for sale by Defendants

121.     Defendants' adoption of several of Tough Mudder's event format elements, signature obstacles, orange and black color scheme and TOUGH MUDDER® Color Mark, the TOUGH MUDDER® Sweatband Mark, overarching philosophy, and marketing tactics combines to create a confusingly similar overall look and feel to Defendants' obstacle course events to the Tough Mudder Trade Dress.

122.     Through their use of the Infringing Mark and Infringing Trade Dress, Defendants seek to unfairly trade off the valuable goodwill and reputation built by Tough Mudder through its MUDDER Marks and Tough Mudder Trade Dress.

123.     Defendants' use of the Infringing Mark and Infringing Trade Dress is without Tough Mudder's permission or authority and is likely to cause confusion, mistake, and deception among consumers and customers.

124.     Defendants' uses of the Infringing Mark and Infringing Trade Dress in interstate commerce to advertise, promote, and operate their obstacle course events, and through the Mini Mudder Website, Mini Mudder Facebook Page, and Mini Mudder YouTube Page, were never approved, permitted or endorsed by Tough Mudder, and occurred after Tough Mudder had established extensive and valuable goodwill in connection with its goods and services identified by the MUDDER Marks.

125.     Defendants' use of the Infringing Mark and Infringing Trade Dress in interstate commerce and commerce affecting interstate commerce was and continues to be without Tough Mudder's consent, and beginning long after Tough Mudder had established extensive and valuable goodwill in connection with their goods and services identified by the MUDDER Marks and Tough Mudder Trade Dress.

126.     Tough Mudder's first use in commerce of the MUDDER Marks and Tough Mudder Trade Dress predate Defendants' first use of the Infringing Mark and Infringing Trade Dress and, therefore, have priority over Defendants' first use of the Infringing Mark and Infringing Trade Dress.

127.     Notwithstanding the constructive notice of the MUDDER Marks by virtue of the their respective federal registrations, Defendants had actual notice of Tough Mudder's rights in the MUDDER Marks and Tough Mudder Trade Dress at least as early as September 29, 2012, as evidenced by Dobil's intentional clothing of himself and event volunteers in TOUGH MUDDER® t-shirts and orange TOUGH MUDDER® sweatbands (as depicted in the TOUGH MUDDER® Color Mark) as he operated the 2012 Mini Mudder event.  True and correct copies of photographs taken of the 2012 Mini Mudder event, available on the Mini Mudder Website, are incorporated by reference and attached hereto as **Exhibit 34**.



Figure 24: Photographs of Dobil and event volunteers wearing TOUGH
MUDDER® apparel and sweatbands during 2012 Mini Mudder event

128.     Upon information and belief, Defendants intentionally wear TOUGH MUDDER® branded apparel during Mini Mudder Events to create the false impression that Defendants' Mini Mudder events are made, authorized, sponsored, or endorsed by or otherwise connected or associated with Tough Mudder.

129.     Upon information and belief, Defendants continued this practice of wearing TOUGH MUDDER® branded apparel for its 2013 Mini Mudder event.  True and correct copies of photographs taken of the 2013 Mini Mudder event, available on the Mini Mudder Website, are incorporated by reference and attached hereto as **Exhibit 35**.



Figure 25: Dobil wearing TOUGH MUDDER® t-shirt and TOUGH MUDDER® sweatband
bearing the TOUGH MUDDER® Color Mark during 2013 Mini Mudder Event

130.     In addition to having actual knowledge of Tough Mudder, its MUDDER Marks, and Tough Mudder Trade Dress, Defendants further had actual notice of Tough Mudder's rights in the MUDDER Marks and Tough Mudder Trade Dress at least as recently as January 27, 2015,

when Tough Mudder notified Defendants of their infringing use of the MUDDER Marks and Tough Mudder Trade Dress.

131.     Upon information and belief, Dobil is the founder, owner, and CEO of the unincorporated entity Mini Mudder.

132.     Upon information and belief, in his respective positions as owner of Mini Mudder, Dobil exercises complete control, not mere majority or complete stock control, but complete domination not only of finances but of policy and business practice with respect to Mini Mudder's transactions, including the design of its events and obstacles and its interactive Mini Mudder Website, Mini Mudder Facebook Page, and Mini Mudder YouTube Page, such that Mini Mudder has no separate mind, will, or existence of its own.

133.     Upon information and belief, in his role as owner and CEO of Mini Mudder, Dobil is actively and personally involved in the wrongful acts giving rise to this action.

134.     Upon information and belief, Dobil actively participated as a moving force in the decision for Mini Mudder to engage in the infringing and unfair acts complained of herein, and otherwise caused the infringement as a whole to occur.

135.     Upon information and belief, Dobil actually and substantially participated in Mini Mudder's infringing and unfair acts complained of herein, and otherwise caused the infringement as a whole to occur.

136.     Upon information and belief, Dobil personally took part in, ratified and/or directed others to engage in the infringing activity.  As a result, Dobil is personally liable for the wrongful acts committed as alleged herein.  Further, as the owner of Mini Mudder, Dobil has a direct financial interest in Mini Mudder and the right and ability to supervise Mini Mudder's activities, including the wrongful acts alleged herein.

137.     Upon information and belief, Dobil knowingly and actively participated in authorized, ordered, controlled, participated, approved, or ratified operation of the Mini Mudder Website and Mini Mudder Facebook page.

## F.    HARM TO TOUGH MUDDER

138.     Tough Mudder and Defendants are competitors in the obstacle course challenge industry, and compete for a common pool of customers.

139.     Upon information and belief, Defendants specifically target Tough Mudder's customers to register their children in Defendants' Mini Mudder events.

140.     Organizing obstacle course events that are suitable for children is a natural expansion of the goods and services Tough Mudder already provides.

141.     In fact, Tough Mudder organizes obstacle course events specifically designed for children, featured at all Tough Mudder and Mudderella events in the United States, United Kingdom, Germany Ireland and Australia.  In 2015, as a natural expansion of Tough Mudder's family of "MUDDER" branded goods and services, Tough Mudder has teamed with sponsor Britvic and its Fruit Shoots juice beverage to present the Fruit Shoots Mini Mudder event at all Tough Mudder and Mudderella events worldwide.

142.     Defendants' use of the Infringing Mark and Infringing Trade Dress in interstate commerce is without Tough Mudder's permission or authority and is likely to cause or has caused confusion, mistake, and deception among consumers and customers.

143.     Defendants' use of the Infringing Mark and Infringing Trade Dress in interstate commerce to advertise, promote, and market their goods and services were never approved, permitted or endorsed by Tough Mudder, and occurred after Tough Mudder had established extensive and valuable goodwill in connection with its goods and services identified by the MUDDER Marks and Tough Mudder Trade Dress.

144.     In selecting and continuing their use of the MUDDER Marks, and selecting and using similar course layouts, similar obstacles to Tough Mudder's signature obstacles, similar event elements, and a similar marketing campaign as Tough Mudder, coupled with using the Infringing Mark and wearing TOUGH MUDDER® branded apparel while operating their Mini Mudder events, Defendants have acted and continue to act with the wanton disregard for Tough Mudder's rights, and with the willful intent and purpose of improperly taking or benefiting from the favorable reputation and valuable goodwill that Tough Mudder has established in the MUDDER Marks and Tough Mudder Trade Dress.   Defendants' actions have caused and continue to cause their goods and services to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected or associated with Tough Mudder.

145.     The infringing trade names, trademarks, and trade dress utilized by Defendants incorporating similar event formats, color schemes, layouts, obstacles, and marketing, are colorable imitations of and confusingly similar to the MUDDER Marks (including, without limitation, the color orange and orange headband) and Tough Mudder Trade Dress.

146.     Defendants' wrongful and illegal activities are likely to cause confusion, and have to cause mistake, and to deceive consumers and others as to the source, nature, characteristics, and quality of the goods and services offered by Defendants.

147.     Moreover, Defendants' wrongful and illegal activities are likely to cause confusion, to cause mistake, and to deceive prospective consumers and others that may have heard of Tough Mudder's endurance challenges through word-of-mouth advertising from existing and ongoing participants as to the source, nature, characteristics, and quality of the goods and services offered by Defendants.

43

148.    Defendants' offering of obstacle course events under the Infringing Mark and Infringing Trade Dress is likely to cause, to the extent it has not already, actual confusion, actual injury, and loss of goodwill and business to Tough Mudder.

149.    Upon information and belief, there is no indication that Defendants have secured the proper permits or insurance to hold such events.

150.    It is further unclear whether Defendants provide appropriate medical personnel to attend to any participants that may be injured during the Mini Mudder event.

151.    As demonstrated by the Mini Mudder Website and the Comparison Chart, several of the Mini Mudder obstacles require adult assistance.

152.    According to the Mini Mudder Website, for the 2013 Mini Mudder event, medical attention was provided by "Team XRay," which "consists of the team medic and course engineers and will be acting as first responders should kids go down."

153.    Dobil, along with three other individuals identified only by first name and last initial, comprised Team XRay.

154.    Upon information and belief, Dobil is not a medical professional.

155.    The Mini Mudder Website does not identify any medical personnel for the 2012 Mini Mudder event.

156.    Given that Mini Mudder events appear on information and belief to lack proper insurance, permits, and medical personnel, such events may be potentially dangerous for Mini Mudder participants and put participants at risk of injury.

157.    As such, the nature of Mini Mudder events will damage Tough Mudder's reputation and goodwill once consumers begin to associate – to the extent they have not already – Defendants' ill-prepared events with Tough Mudder's endurance challenges.

158.     Moreover, if an injury should occur at one of Defendants' Mini Mudder events, the injured party or its parent or guardian likely would believe that Defendants' events are somehow associated with or sponsored by Tough Mudder and might seek damages from Tough Mudder even though it has no association or sponsorship of Defendants' events.

159.     Further, Defendants' use of the Infringing Trademark and Infringing Trade Dress have already caused actual confusion.

160.     On October 10, 2014, Jennifer Lee, a third party, posted on Defendants' Mini Mudder Facebook page, inquiring as to the age limits for the Mini Mudder event.  A true and correct copy of a screenshot of the October 10, 2014 post on the Mini Mudder Facebook Page is incorporated by reference and attached hereto as **Exhibit 36**.

161.     Upon receiving a response from Defendants, Ms. Lee stated that "my husband is participating in the [mudder event] tomorrow in Englishtown and we were told that there is an event for younger kids for $10."

162.     On October 11, 2014 (one day after Ms. Lee's Facebook post), Tough Mudder hosted an endurance challenge in Englishtown, New Jersey.  A true and correct copy of Tough Mudder's event webpage is incorporated by reference and attached hereto as **Exhibit 37**.

163.     The October 10, 2014 Facebook post demonstrates the actual confusion caused by Defendants' infringement of the MUDDER Marks, Tough Mudder Trade Dress, and false and/or deceptively misleading representations.



Figure 26: October 10, 2014 post on the Mini Mudder Facebook page

164.     If consumers continue to associate Defendants' services with Tough Mudder's, the nature of Defendants' events will hurt the substantial reputation and goodwill acquired by Tough Mudder.

165.     Tough Mudder further will suffer irreparable harm because Defendants, through the Mini Mudder Website, encourage and induce third parties to commit additional and separate infringements by using the Infringing Mark and Infringing Trade Dress to "throw [their] own Mini Mudder."

166.     On the Mini Mudder Website, Defendants provide third parties with "everything you need to throw your own Mini Mudder."

167.     Defendants provide third parties with "a complete list and description of obstacles," as well as obstacle signs that use the same TOUGH MUDDER® Color Mark, orange and black color scheme, and font as used by Tough Mudder.

46

168.     Defendants further encourage and induce infringement by third parties by allowing parties to "order[] Official 'Mini Mudder' t-shirts for your event."

169.     According to the Mini Mudder Facebook Page, "The Mini Mudder has coordinated mud run obstacle courses all across the country for a variety of organizations, including schools, youth organizations and non-profits.  And we are just getting started!  Stay tuned for some exciting new Mini Mudder events coming up in 2015!"

### VI.     CAUSES OF ACTION

### COUNT I

### FEDERAL AND STATE TRADEMARK INFRINGEMENT
(*against all Defendants*)

170.     Tough Mudder incorporates by reference paragraphs 1 – 169 as though set forth fully herein.

171.     Defendants' acts constitute infringement of Tough Mudder's exclusive rights to the MUDDER Marks in violation of the Lanham Act, specifically 15 U.S.C. § 1114(1) and § 1125, and of Tough Mudder's trademark rights under Pennsylvania state and common law.

172.     Defendants have used in commerce a reproduction, counterfeit, copy, or colorable imitation of the MUDDER Marks in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

173.     Defendants' acts also constitute contributory infringement of Tough Mudder's exclusive rights to the MUDDER Marks in violation of the Lanham Act, specifically 15 U.S.C. § 1114(1) and § 1125, and of Tough Mudder's trademark rights under Pennsylvania state and common law.

174.     Through the "Throw Your Own Mini Mudder" webpage on the Mini Mudder Website, Defendants have engaged in contributory infringement by intentionally inducing one or more third parties to infringe the MUDDER Marks, including, without limitation, "a variety of organizations, including schools, youth organizations and non-profits" and other "events being held all across the country."

175.     Through the "Throw Your Own Mini Mudder" webpage on the Mini Mudder Website, Defendants supply their goods or services to third parties, including providing "everything you need to throw your own Mini Mudder," including obstacle and course designs, obstacle signs, and "Official 'Mini Mudder' t-shirts for your event" using the MUDDER Marks, or variants thereof similar to or likely to cause confusion with the MUDDER Marks.

176.     Upon information and belief, Defendants had knowledge of those third parties hosting Mini Mudder "events all across the country," and thus, had knowledge of, or had reason to know of, the direct infringement by those third parties.

177.     Defendants' acts of contributory infringement explicitly or implicitly encourage additional trademark violations by third parties.

178.     Defendants' acts of infringement have caused Tough Mudder damages, and Tough Mudder seeks judgment pursuant to 15 U.S.C. § 1117 for statutory damages, Defendants' profits made by Defendants' unauthorized and infringing use of Tough Mudder's trademarks, for the damages sustained by Tough Mudder, for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

179.     Tough Mudder seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or Tough Mudder's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

180.     Pursuant to 15 U.S.C. § 1116 and equity, Tough Mudder has been irreparably harmed and is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

181.     Pursuant to 15 U.S.C. § 1118 and equity, Tough Mudder is entitled to impoundment and destruction of infringing articles.

182.     Tough Mudder is further entitled to all available remedies provided by common law, including, but not limited, to temporary and permanent injunctive relief, Defendants' profits, any damages sustained by Tough Mudder, and costs.

## COUNT II

### TRADE NAME INFRINGEMENT
### (*against all Defendants*)

183.     Tough Mudder incorporates by reference paragraphs 1 – 169 as though set forth fully herein.

184.     Defendants' acts constitute trade name infringement in violation of Tough Mudder's trade name rights at common law.

185.     Defendants' acts of infringement have caused Tough Mudder damages, and Tough Mudder seeks judgment for Defendants' profits made by Defendants' unauthorized and infringing use of Tough Mudder's trade name, for the damages sustained by Tough Mudder, for all costs necessary to remediate the infringing uses and their effects, and for the costs incurred in bringing the present action.

186.     Further, Tough Mudder has been irreparably harmed and is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

## COUNT III

**FEDERAL AND STATE TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a) AND PENNSYLVANIA COMMON LAW**
(*against all Defendants*)

187.     Tough Mudder incorporates by reference paragraphs 1 – 169 as though set forth fully herein.

188.     Tough Mudder is the owner of all right, interest, and title to and in the distinctive Tough Mudder Trade Dress.

189.     The Tough Mudder Trade Dress, as alleged herein, is inherently distinctive and/or has acquired secondary meaning, and is not functional.  Based on Tough Mudder's extensive and consistent advertising, promotion, and sales throughout the United States and abroad, the Tough Mudder Trade Dress has acquired distinctiveness and secondary meaning among consumers, identifying Tough Mudder as the single source of its high-quality endurance challenges.

190.     Defendants have willfully copied and employed the distinctive overall look and feel and total impression of the Tough Mudder Trade Dress in their own obstacle course events and marketing campaigns, in violation of 15 U.S.C. § 1125(a).

191.     Defendants have misappropriated the Tough Mudder Trade Dress by mimicking a combination of elements comprising the Tough Mudder Trade Dress, including, without limitation, adopting similar event format elements such as beginning each event with a distinctive "pep talk" and ending each event with the award of a branded t-shirt, celebratory beverage, and post party, adopting similar obstacles as Tough Mudder's signature obstacles, and adopting similar marketing campaigns, which, in the cumulative, creates an overall look and feel and total impression of its events that is confusingly similar to the Tough Mudder Trade Dress.

50

192.     Defendants' offering and promotion of obstacle course events with substantially similar event format elements, obstacles, and marketing is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection, or association of Defendants with Tough Mudder, or as to the origin, sponsorship, or approval by Tough Mudder of Defendants' goods or services.

193.     Defendants' acts constitute infringement of Tough Mudder's exclusive rights to the Tough Mudder Trade Dress in violation of the Lanham Act, specifically 15 U.S.C. § 1125(a), and of Tough Mudder's trademark rights under Pennsylvania state and common law.

194.     Defendants have used and are using a trade dress which is identical or confusingly similar to the Tough Mudder Trade Dress with the intent to deceive the public into believing that goods and services offered or sold by Defendants are made by, approved by, sponsored by, or affiliated with Tough Mudder.

195.     Defendants' acts as alleged herein were committed with the intent to pass off Defendants' goods and services as the goods and services of, approved by, sponsored by, or affiliated with Tough Mudder, and with the intent to deceive and defraud the public.

196.     Defendants' acts also constitute contributory infringement of Tough Mudder's exclusive rights to the Tough Mudder Trade Dress in violation of the Lanham Act, specifically § 1125, and of Tough Mudder's trademark rights under Pennsylvania state and common law.

197.     Through the "Throw Your Own Mini Mudder" webpage on the Mini Mudder Website, Defendants have engaged in contributory infringement by intentionally inducing one or more third parties to infringe the MUDDER Marks, including, without limitation, "a variety of organizations, including schools, youth organizations and non-profits" and other "events being held all across the country."

198.     Through the "Throw Your Own Mini Mudder" webpage on the Mini Mudder Website, Defendants supply their goods or services to third parties, including providing "everything you need to throw your own Mini Mudder," including obstacle and course designs, obstacle signs, and "Official 'Mini Mudder' t-shirts for your event" using the MUDDER Marks, or variants thereof similar to or likely to cause confusion with the MUDDER Marks.

199.     Upon information and belief, Defendants had knowledge of those third parties hosting Mini Mudder "events all across the country," and thus, had knowledge of, or had reason to know of, the direct infringement by those third parties.

200.     Defendants' acts of contributory infringement explicitly or implicitly encourage additional trademark violations by third parties.

201.     Defendants' acts constitute trade dress infringement, unfair competition, and passing off, and have caused Tough Mudder damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to Tough Mudder's goodwill and reputation caused by Defendants.

202.     Defendants' acts of infringement have caused Tough Mudder damages, and Tough Mudder seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unauthorized and infringing use of Tough Mudder's trademarks, for the damages sustained by Tough Mudder, for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

203.     Tough Mudder seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or Tough Mudder's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

204.     Pursuant to 15 U.S.C. § 1116 and equity, Tough Mudder has been irreparably harmed and is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

205.     Pursuant to 15 U.S.C. § 1118 and equity, Tough Mudder is entitled to impoundment and destruction of infringing articles.

206.     Tough Mudder is further entitled to all available remedies provided by common law, including, but not limited, to temporary and permanent injunctive relief, Defendants' profits, any damages sustained by Tough Mudder, and costs.

## COUNT IV

### FEDERAL STATUTORY UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)
### (*against all Defendants*)

207.     Tough Mudder hereby incorporates by reference paragraphs 1 – 169 as if set forth fully herein.

208.     Defendants have used trademarks and trade dresses which are identical or confusingly similar to Tough Mudder with the intent to deceive the public into believing that goods and services offered or sold by Defendants are made by, approved by, sponsored by, or affiliated with Tough Mudder.

209.     Defendants' acts as alleged herein were committed with the intent to pass off Defendants' goods and services as the goods and services of, approved by, sponsored by, or affiliated with Tough Mudder, and with the intent to deceive and defraud the public.

210.     Defendants' acts constitute unfair competition and passing off, and have caused Tough Mudder damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to Tough Mudder's goodwill and reputation caused by Defendants.

211.     Defendants' acts constitute violations of 15 U.S.C. § 1125.

212.     Defendants' acts of unfair competition have caused Tough Mudder damages, and Tough Mudder seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of Tough Mudder's goods and services, for the damages sustained by Tough Mudder, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs, expenses, and attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

213.     Tough Mudder further seeks judgment for three times the amount of Defendants' profits or Tough Mudder's damages, whichever is greater, due to the nature of Defendants' conduct.

214.     Pursuant to 15 U.S.C. § 1116, Tough Mudder has been irreparably harmed and is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

## COUNT V

### FALSE DESIGNATION OF ORIGIN IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)
### (*against all Defendants*)

215.     Tough Mudder incorporates by reference paragraphs 1 – 169 as though set forth fully herein.

216.     Defendants have caused goods and/or services to enter interstate commerce designated with variations of the MUDDER Marks.

217.     Defendants have caused goods and/or services to enter interstate commerce designated with variations of the Tough Mudder Trade Dress.

54

218.     Defendants' use of said designation and other representations constitute a false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Tough Mudder and as to the origin, sponsorship, or approval of such goods and services by Tough Mudder.

219.     Defendants' acts are in violation of 15 U.S.C. § 1125 in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Tough Mudder, and as to the origin, sponsorship, and approval of Defendants' goods, services, and commercial activities by Tough Mudder.

220.     Defendants' acts have caused Tough Mudder damages, and Tough Mudder seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of Tough Mudder's goods and services, for the damages sustained by Tough Mudder, for all costs necessary to remediate the unlawful acts and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

221.     Tough Mudder further seeks judgment for three times the amount of Defendants' profits or Tough Mudder's damages, whichever is greater, due to the nature of Defendants' conduct.

222.     Pursuant to 15 U.S.C. § 1116 and equity, Tough Mudder has been irreparably harmed and is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

223.     Pursuant to 15 U.S.C. § 1118 and equity, Tough Mudder is entitled to impoundment and destruction of infringing articles.

## COUNT VI

### FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)
### (*against all Defendants*)

224.     Tough Mudder incorporates by reference paragraphs 1 – 169 as though set forth fully herein.

225.     Defendants' explicit and implicit promotional claims in interstate commerce about their obstacle course events, including, but not limited to, the statements that Defendants' Mini Mudder events are "a Tough Mudder for kids" and Defendants' intentional wearing of TOUGH MUDDER® branded apparel during the operation of Mini Mudder events, are literally and/or impliedly false and misleading.

226.     Defendants' sale of and offers for sale of its obstacle course events services, as alleged herein, constitutes "use in commerce" as defined in 15 U.S.C. § 1127.

227.     As alleged herein, Defendants have intentionally made literally false statements in commercial advertising or promotion in interstate commerce which misrepresent the nature, characteristics, qualities, or geographic origin of Defendants' and/or Tough Mudder's goods, services, or commercial activities, including, but not limited to, the statements that Defendants' Mini Mudder events are "a Tough Mudder for kids" and Defendants' intentional wearing of TOUGH MUDDER® branded apparel during the operation of Mini Mudder events.

228.     Defendants' false and/or misleading statements regarding its obstacle course events are material in that the statements will likely influence existing and potential consumers of (a) obstacle course events generally; (b) Defendants' obstacle course events; (c) Tough Mudder's endurance challenges; and (d) accessory or related branded merchandise for the

56

Defendants' obstacle course events and/or Tough Mudder's endurance challenges, including, without limitation, men's, women's, and children's apparel; headgear; drinkware; training gear; technology accessories; magnets, key chains, decals, and stickers; and photographs.

229.     Consumers of Defendants' obstacle course events (and consumers of obstacle course events generally) have no choice in many circumstances but to trust that statements made by Defendants (directly or through its agents or representatives) that Defendants' obstacle course events have the nature, characteristics, and qualities claimed for them by Defendants.

230.     Defendants' false and/or misleading statements regarding Defendants' obstacle course events have actually deceived or have the capacity to tend to deceive a substantial portion of the intended audience for such statements.

231.     Defendants' false and/or misleading statements regarding obstacle course events generally, including Tough Mudder's endurance challenges, are material in that the statements will likely influence existing and potential consumers of (a) obstacle course events generally; (b) Defendants' obstacle course events; (c) Tough Mudder's endurance challenges; and (d) accessory or related branded merchandise for the Defendants' obstacle course events and/or Tough Mudder's endurance challenges, including, without limitation, men's, women's, and children's apparel; headgear; drinkware; training gear; technology accessories; magnets, key chains, decals, and stickers; and photographs.

232.     Consumers of Defendants' obstacle course events (and consumers of obstacle course events generally) have no choice in many circumstances but to trust that statements made by Defendants (directly or through its agents or representatives) that obstacle course events generally, including Tough Mudder's endurance challenges, have the nature, characteristics, and qualities claimed for them by Defendants.

233.     Defendants' false and/or misleading statements regarding obstacle course events generally, including Tough Mudder's endurance challenges, have actually deceived or have the capacity to tend to deceive a substantial portion of the intended audience for such statements.

234.     Defendants' false or misleading statements have been introduced into interstate commerce through, among other avenues, Defendants' publication of such statements on the Mini Mudder Website and the Mini Mudder Facebook Page.

235.     By these actions, Defendants have engaged and continue to engage in false advertising in violation of the statutory law of the United States, 15 U.S.C. § 1125 *et seq.* As a result, Tough Mudder has suffered and will continue to suffer damage to its business, reputation, and goodwill.

236.     Upon information and belief, Dobil used and continues to use Mini Mudder  as an alter ego, have and continue to have a direct financial interest in the sale of Mini Mudder's obstacle course event services, and knowingly and actively participated in the wrongful acts of Mini Mudder.   Therefore, Dobil is personally liable for the false advertising and unfair competition of Mini Mudder.

237.     Defendants willfully, knowingly, intentionally, maliciously, or recklessly are using in commerce false and/or misleading descriptions of fact or misleading representations of fact concerning the nature, characteristics, and qualities of Defendants' obstacle course events and obstacle course events generally, including Tough Mudder's endurance challenges.

238.     Defendants' false and/or misleading statements have caused Tough Mudder injury and/or are likely to cause Tough Mudder injury, either by direct diversion of sales from Tough Mudder to Defendants or by a lessening of the goodwill associated with Tough Mudder's endurance challenges.

239.     Tough Mudder has been injured by Defendants' actions and representations because customers who would otherwise have purchased from Tough Mudder have made, or will make, purchasing decisions based upon Defendants' false and misleading representations concerning the attributes of Defendants' obstacle course events and obstacle course events generally, including Tough Mudder's endurance challenges.

240.     Unless enjoined by this Court, Defendants' acts will irreparably injure Tough Mudder's goodwill and erode its sales, customer base, and share in the market for obstacle course events.

241.     Defendants' acts have caused Tough Mudder damages, and Tough Mudder seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits, any damages sustained by Tough Mudder; for all costs, expenses, and attorney fees (as this is an exceptional case) incurred in bringing the present action and attempts to remedy Defendants' actions.

242.     Tough Mudder seeks an award of treble damages for at least three times the amount of Defendants' profits or Tough Mudder's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

243.     Pursuant to 15 U.S.C. § 1116, Tough Mudder has been irreparably harmed and is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

244.     Pursuant to 15 U.S.C. § 1117, Tough Mudder seeks judgment for three times the amount of Defendants' profits or Tough Mudder's damages, whichever is greater, due to the nature of Defendants' conduct.

245.     Defendants' acts are willful, wanton, and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Tough Mudder to recover additional damages and attorney fees pursuant to 15 U.S.C. § 1117.

246.     Pursuant to 15 U.S.C. § 1118, Tough Mudder is entitled to impoundment and destruction of all packaging, containers, devices, products, literature, advertising and any other material bearing false, deceptive, and/or misleading statements and/or any variants thereof (or similar wording).

## COUNT VII

### TRADEMARK DILUTION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(c)
### (*against all Defendants*)

247.     Tough Mudder incorporates by reference paragraphs 1 – 169 as though set forth fully herein.

248.     Tough Mudder and its MUDDER Marks have been famous for a significant amount of time.

249.     Tough Mudder and its Tough Mudder Trade Dress have been famous for a significant amount of time.

250.     Defendants' use of the MUDDER Marks, or variants thereof similar to or likely to cause confusion with the MUDDER Marks, has been used in commerce for Defendants' commercial gain.

251.     Defendants' use of the Tough Mudder Trade Dress, or a combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress, has been used in commerce for Defendants' commercial gain.

252.     Defendants' use of the MUDDER Marks, or variants thereof similar to or likely to cause confusion with the MUDDER Marks, began after Tough Mudder's MUDDER Marks became famous.

253.     Defendants' use of the Tough Mudder Trade Dress, or a combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress, began after Tough Mudder's Tough Mudder Trade Dress became famous.

254.     Defendants' acts have already caused or are likely to cause an association arising from the similarity between their infringing use and the Tough Mudder Trade Dress that lessens the capacity of the Tough Mudder Trade Dress to identify and distinguish its goods and services.

255.     Defendants have engaged in dilution by blurring because Defendants' use of the MUDDER Marks, or variants thereof similar to or likely to cause confusion with the MUDDER Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and the MUDDER Marks that impairs the actual or acquired distinctiveness of the MUDDER Marks.

256.     Defendants have engaged in dilution by blurring because Defendants' use of the Tough Mudder Trade Dress, or a combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and the Tough Mudder Trade Dress that impairs the actual or acquired distinctiveness of the Tough Mudder Trade Dress.

257.     Defendants have engaged in dilution by tarnishment because Defendants' use of the MUDDER Marks, or variants thereof similar to or likely to cause confusion with the MUDDER Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and literally false and/or deceptively misleading

representations and Tough Mudder's MUDDER Marks that harms the reputation and goodwill associated with Tough Mudder's MUDDER Marks.

258.     Defendants have engaged in dilution by tarnishment because Defendants' use of the Tough Mudder Trade Dress, or a combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and literally false and/or deceptively misleading representations and Tough Mudder's Tough Mudder Trade Dress that harms the reputation and goodwill associated with Tough Mudder's Tough Mudder Trade Dress.

259.     Defendants willfully intended to trade on the recognition of Tough Mudder and its famous MUDDER Marks.

260.     Defendants willfully intended to trade on the recognition of Tough Mudder and its famous trade dress.

261.     Defendants' acts are in violation of 15 U.S.C. § 1125(c).

262.     Defendants' acts have caused Tough Mudder damages, and Tough Mudder seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants through their unlawful acts, for the damages sustained by Tough Mudder, for all costs necessary to remediate the unlawful acts and their effects, and for the costs, expenses, and attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

263.     Tough Mudder further seeks judgment for three times the amount of Defendants' profits or Tough Mudder's damages, whichever is greater, due to the nature of Defendants' conduct.

264.     Pursuant to 15 U.S.C. §§ 1116 and 1125(c)(1) and equity, Tough Mudder has been irreparably harmed and is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

265.     Pursuant to 15 U.S.C. § 1118, Tough Mudder is entitled to impoundment and destruction of infringing articles.

**COUNT VIII**

**CYBERSQUATTING IN VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT, 15 U.S.C. § 1125(d)(1)(A)**
(*against all Defendants*)

266.     Tough Mudder incorporates by reference paragraphs 1 – 169 as though set forth fully herein.

267.     As alleged herein, the MUDDER Marks are distinctive and famous and entitled to protection.

268.     Upon information and belief, on or about October 17, 2012, Defendants registered the domain name www.theminimudder.com, which redirects to a Wordpress website located at theminimudder.wordpress.com (collectively, the "Domain Name") and have thereafter used the Domain Name in commerce without Tough Mudder's authority or permission.

269.     At the time the Domain Name was registered, and at all material times thereafter, Defendants had and continue to have a bad faith intent to profit from the MUDDER Marks and Tough Mudder Trade Dress.

270.     Defendants registered and use the Domain Name in spite of the fact the domain name is identical or confusingly similar to the MUDDER Marks.

271.     Defendants registered and use the Domain Name in spite of the fact the MUDDER Marks were famous at the time the Domain Name was registered, and the Domain

Name was and continues to be identical, confusingly similar to, and dilutive of the famous MUDDER Marks.

272.     Tough Mudder has suffered and continues to suffer harm from Defendants' registration and use of the Domain Name.

273.     Tough Mudder has been irreparably harmed and is entitled to all available remedies provided by 15 U.S.C. §§ 1114, 1116, 1117, 1118, and 1125, including temporary, preliminary and permanent injunctive relief; Defendants' profits; any damages sustained by Tough Mudder; costs; pre-judgment interest; post-judgment interest; destruction of all packaging, literature, advertising and any other material bearing the MUDDER Marks and/or any variants thereof; transfer and/or cancellation of the Domain Name www.theminimudder.com and theminimudder.wordpress.com; and other equitable relief.

274.     This is an exceptional case under 15 U.S.C. § 1117 such that Plaintiff is entitled to its reasonable attorney fees and expenses.

## COUNT IX

**UNFAIR COMPETITION IN VIOLATION OF PENNSYLVANIA COMMON LAW**
**(*against all Defendants*)**

275.     Tough Mudder incorporates by reference paragraphs 1 – 169 as though set forth fully herein.

276.     As alleged herein, Tough Mudder owns the MUDDER Marks and Tough Mudder Trade Dress.

277.     As alleged herein, the MUDDER Marks are valid and legally protectable.

278.     As alleged herein, the Tough Mudder Trade Dress is valid and legally protectable.

279.     Defendants' infringing use of the MUDDER Marks, and/or variants thereof similar to or likely to cause confusion with the MUDDER Marks, is likely to cause confusion concerning the origin of the goods and services associated with the mark.

280.     Defendants' infringing use of the Tough Mudder Trade Dress, and/or a combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress, is likely to cause confusion concerning the origin of the goods and services associated with the trade dress.

281.     Tough Mudder and Defendants are competitors in the obstacle course challenge industry, and compete for a common pool of customers.  As alleged herein, Defendants have engaged in unfair, deceptive, or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Pennsylvania common law.

282.     Through Defendants' unauthorized use of the MUDDER Marks, and/or variants thereof similar to or likely to cause confusion with the MUDDER Marks, in connection with their obstacle course challenges and on their Mini Mudder Website, Mini Mudder Facebook Page, and Mini Mudder YouTube Page, and in commerce, Defendants have committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

283.     Through Defendants' unauthorized use of the Tough Mudder Trade Dress, and/or a combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress, in connection with their obstacle course challenges and on their Mini Mudder Website, Mini Mudder Facebook Page, and Mini Mudder YouTube Page, and in commerce, Defendants have committed trade dress infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

65

284.     Defendants are liable to Tough Mudder for unfair competition under Pennsylvania law, because Defendants' conduct is tortious and has deprived Tough Mudder of customers and other prospects.

285.     Defendants' explicit and implicit promotional claims about its obstacle course events, including, but not limited to, the statements that Defendants' Mini Mudder events are "a Tough Mudder for kids" and Defendants' intentional wearing of TOUGH MUDDER® branded apparel during the operation of Mini Mudder events, are literally and impliedly false and misleading.

286.     Defendants' acts as alleged herein were committed with the intent to deceive and defraud the public in order to gain an increase their sales, customer base, and share in the obstacle course challenge industry and/or eliminate Tough Mudder from the obstacle course challenge industry.

287.     Defendants' acts constituting unfair competition have caused Tough Mudder damages as alleged herein.

288.     Defendants' foregoing acts constitute unfair competition and infringement of Tough Mudder's common law rights for which Tough Mudder has no adequate remedy at law.

289.     Defendants' acts of unfair competition have caused Tough Mudder damages, and Tough Mudder seeks judgment for Defendants' profits made by Defendants' unfair competition and/or passing off of Tough Mudder's goods and services, for the damages sustained by Tough Mudder, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

290.     Tough Mudder further seeks judgment for punitive damages of at least three times the amount of Defendants' profits or Tough Mudder's damages, whichever is greater, due to the nature of Defendants' conduct.

291.     Further, Tough Mudder has been irreparably harmed and is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

## COUNT X

**TRADEMARK DILUTION IN VIOLATION OF THE PENNSYLVANIA TRADEMARK ACT, 54 PA. CONST. STAT. ANN. § 1124 *et seq.* (*against all Defendants*)**

292.     Tough Mudder incorporates by reference paragraphs 1 – 169 as if set forth fully herein.

293.     Tough Mudder and its MUDDER Marks have been famous for a significant amount of time.

294.     Tough Mudder and its Tough Mudder Trade Dress have been famous for a significant amount of time.

295.     Defendants' use of the MUDDER Marks, or variants thereof similar to or likely to cause confusion with the MUDDER Marks, has been used in Pennsylvania commerce for Defendants' commercial gain.

296.     Defendants' use of the Tough Mudder Trade Dress, or a combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress, has been used in Pennsylvania commerce for Defendants' commercial gain.

297.     Defendants' use of the MUDDER Marks, or variants thereof similar to or likely to cause confusion with the MUDDER Marks, began after Tough Mudder's MUDDER Marks became famous.

67

298.     Defendants' use of the Tough Mudder Trade Dress, or a combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress, began after Tough Mudder's Tough Mudder Trade Dress became famous.

299.     Defendants' acts have already caused or are likely to cause an association arising from the similarity between their infringing use and the Tough Mudder Trade Dress that lessens the capacity of the Tough Mudder Trade Dress to identify and distinguish its goods and services.

300.     Defendants have engaged in dilution by blurring because Defendants' use of the MUDDER Marks, or variants thereof similar to or likely to cause confusion with the MUDDER Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and the MUDDER Marks that impairs the actual or acquired distinctiveness of the MUDDER Marks.

301.     Defendants have engaged in dilution by blurring because Defendants' use of the Tough Mudder Trade Dress, or a combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and the Tough Mudder Trade Dress that impairs the actual or acquired distinctiveness of the Tough Mudder Trade Dress.

302.     Defendants have engaged in dilution by tarnishment because Defendants' use of the MUDDER Marks, or variants thereof similar to or likely to cause confusion with the MUDDER Marks, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and literally false and/or deceptively misleading representations and Tough Mudder's MUDDER Marks that harms the reputation and goodwill associated with Tough Mudder's MUDDER Marks.

303.      Defendants have engaged in dilution by tarnishment because Defendants' use of the Tough Mudder Trade Dress, or a combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress, has already caused or is likely to cause an association arising from the similarity between Defendants' infringing use and literally false and/or deceptively misleading representations and Tough Mudder's Tough Mudder Trade Dress that harms the reputation and goodwill associated with Tough Mudder's Tough Mudder Trade Dress.

304.      Defendants willfully intended to trade on the recognition of Tough Mudder and its famous MUDDER Marks.

305.      Defendants willfully intended to trade on the recognition of Tough Mudder and its famous trade dress.

306.      Defendants' acts are in violation of 54 Pa. Const. Stat. Ann. § 1124 *et seq.*

307.      Defendants' acts have caused Tough Mudder damages, and Tough Mudder is entitled to injunctive relief and all other available statutory remedies under 54 Pa. Const. Stat. Ann. §§ 1124 and 1125 *et seq.*, including, without limitation: Defendants' profits made by Defendants through their unlawful acts; damages sustained by Tough Mudder; for all costs necessary to remediate the unlawful acts and their effects; and for the costs, expenses, and attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

308.      Tough Mudder further seeks judgment for three times the amount of Defendants' profits or Tough Mudder's damages, whichever is greater, due to the nature of Defendants' conduct pursuant to 54 Pa. Const. Stat. Ann. § 1125(a).

309.     Pursuant to 54 Pa. Const. Stat. Ann. § 1124 and equity, Tough Mudder has been irreparably harmed and is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

310.     Pursuant to 54 Pa. Const. Stat. Ann. § 1125(a), Tough Mudder is entitled to impoundment and destruction of infringing articles.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Tough Mudder requests the following relief:

A.     Judgment be entered in favor of Tough Mudder against Defendants for each of the above Counts;

B.     Tough Mudder be awarded all relief to which it is entitled under 15 U.S.C. § 1051 *et seq.* and Pennsylvania statutory and common law;

C.     Defendants, their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, be forthwith preliminarily enjoined and restrained from directly or indirectly infringing the MUDDER Marks, or using any variants thereof similar to or likely to cause confusion with the MUDDER Marks (including, without limitation, the phrase "MINI MUDDER," "www.theminimudder.com," and "theminimudder.wordpress.com"); from directly or indirectly infringing the Tough Mudder Trade Dress, or using any other combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress; from passing off Defendants' obstacle course events as being associated with and/or sponsored by or affiliated with Tough Mudder; from passing off Defendants' obstacle course events as being associated with and/or sponsored by or affiliated with Tough Mudder; from committing any other unfair business practices directed toward obtaining the business and/or customers of Tough Mudder; and from committing any other

70

deceptive and/or unfair business practices directed toward devaluing or diminishing the goodwill and reputation associated with Tough Mudder;

D.      Defendants, their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, shall be preliminary enjoined from stating, representing, or implying orally or in writing (including, but not limited to, print advertisements, marketing materials, websites, blogs, social media) any statements that misrepresent the nature, characteristics, qualities, or geographic origin of Defendants' obstacle course events and/or Tough Mudder's endurance challenges, and/or any statements that Defendants' obstacle course events are superior as compared to Tough Mudder's endurance challenges, including, but not limited to:

a.      directly or indirectly engaging in false and/or misleading advertising or promotion of Defendants' obstacle course events; and/or

b.      making or inducing others to make false, misleading, or deceptive statements or representations of fact in connection with the promotion, advertisement, packaging, display, sale, offering for sale, manufacture, production, circulation, or distribution of Defendants' obstacle course events, including, but not limited to, through the making of false and/or misleading representations about Tough Mudder's endurance challenges;

E.      Defendants be directed to file with this Court and serve on Tough Mudder within thirty (30) days after the service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

F.      At conclusion of trial, Defendants, their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, be

forthwith permanently enjoined from directly or indirectly infringing the MUDDER Marks, or using any variants thereof similar to or likely to cause confusion with the MUDDER Marks (including, without limitation, the phrase "MINI MUDDER," "www.theminimudder.com," and "theminimudder.wordpress.com"); from directly or indirectly infringing the Tough Mudder Trade Dress, or using any other combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress; from passing off Defendants' obstacle course events as being associated with and/or sponsored by or affiliated with Tough Mudder; from committing any other unfair business practices directed toward obtaining the business and/or customers of Tough Mudder; and from committing any other deceptive and/or unfair business practices directed toward devaluing or diminishing the goodwill and reputation associated with Tough Mudder;

G.     At conclusion of trial, Defendants, their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, be forthwith permanently enjoined from the acts Tough Mudder requests to be preliminarily enjoined in ¶ D immediately above;

H.     At the conclusion of trial, Defendants and their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, be directed to surrender the domain name registration for www.theminimudder.com and Wordpress website theminimudder.wordpress.com and forever cease and desist from using the domain name www.theminimudder.com or the Wordpress website theminimudder.wordpress.com in connection with any website, blog, and/or other Internet portal;

I.     At the conclusion of trial, Defendants and their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling

Defendants, be directed to immediately cease using the term "MINI MUDDER" (and any variants thereof, including, without limitation, www.theminimudder.com and theminimudder.wordpress.com) in connection with any account on Facebook.com, YouTube.com, and any other social media accounts, including, without limitation, Twitter.com and Instagram.com;

J.      At conclusion of trial, Defendants and their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, be directed to deliver up and destroy all packaging, containers, devices, products, literature, advertising and any other material that directly or indirectly infringes the MUDDER Marks, or uses any variants thereof similar to or likely to cause confusion with the MUDDER Marks; and/or directly or indirectly infringes the Tough Mudder Trade Dress, or uses any other combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress;

K.      At conclusion of trial, Defendants be directed to deliver up and destroy all packaging, containers, devices, products, literature, advertising and any other material (including, but not limited to, its websites) bearing any of the hereinabove referenced literally false or impliedly false and deceptive statements regarding Defendants' obstacle course events, Tough Mudder's endurance challenges, or variants thereof;

L.      Defendants, their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, be directed to publish and distribute corrective advertising (including, but not limited to, on their websites where they have advertised) to reduce the effects of the literally false or impliedly false and/or misleading

statements regarding Defendants' obstacle course challenges, Tough Mudder's endurance challenges, or variants thereof;

M.     Defendants be directed to file with this Court and serve on Tough Mudder within thirty (30) days after the service of a permanent injunction order, a report in writing under oath, setting forth in detail the manner and form in which they have complied with the permanent injunction order;

N.     Tough Mudder be awarded all relief to which they are entitled under 15 U.S.C. § 1051 *et seq.*, and Pennsylvania statutory and common law;

O.     Tough Mudder be awarded Defendants' profits after an accounting and Tough Mudder's damages, including but not limited to, lost sales and monetary damages incurred as a result of actions Defendants or third parties that Defendants have caused, encouraged, enabled, assisted, and/or facilitated in the advertisement, promotion, sale, and offer for sale of services that directly or indirectly infringe the MUDDER Marks, or use any variants thereof similar to or likely to cause confusion with the MUDDER Marks, directly or indirectly infringe the Tough Mudder Trade Dress, or use any other combination of elements similar to or likely to cause confusion with the Tough Mudder Trade Dress, and that such award be trebled as provided under 15 U.S.C. § 1117 and Pennsylvania statutory and common law;

P.     For its claims related to Defendants' false and/or misleading statements, Tough Mudder be granted an award of monetary damages in an amount to be determined at trial, treble damages, punitive damages, prejudgment and post-judgment interest, attorney fees, expenses, and costs;

Q.     Defendants' acts be deemed exceptional under 15 U.S.C. § 1117;

R.      Tough Mudder be awarded a judgment against Defendants for monetary damages based on Defendants' profits, Tough Mudder's damages, treble damages, punitive damages, attorney fees, litigation expenses, costs, pre-judgment interest, post-judgment interest, and other equitable relief; and

S.      Tough Mudder be awarded such other and further relief as this Court deems just and proper.

## VIII.   <u>JURY DEMAND</u>

Tough Mudder requests a jury for all issues so triable.

Respectfully submitted,

LESAVOY BUTZ & SEITZ LLC

<u>/s/ Zachary J. Cohen</u>
Zachary J. Cohen (PA Attorney ID: 91119)
7535 Windsor Drive, Suite 200
Allentown, Pennsylvania 18195
Tel: (610) 530-2700
Fax: (610) 530-2727
Email: zcohen@lesavoybutz.com

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

Samuel F. Miller (TN BPR No. 022936)
(*pro hac vice* motion forthcoming)
Maia T. Woodhouse (TN BPR No. 030438)
(*pro hac vice* motion forthcoming)
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
Tel: (615) 726-5594
Fax: (615) 744-5594
Email: smiller@bakerdonelson.com
        mwoodhouse@bakerdonelson.com

*Attorneys for Plaintiff Tough Mudder
Incorporated*